# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

LEORNZIE POWELL,              )
                             )
        Plaintiff,            )
                             )
    vs.                      )          Case No. 5:17-cv-01219-TMP
                             )
NANCY A. BERRYHILL,          )
*Deputy Commissioner for*    )
*Operations of the Social Security*  )
*Administration*,            )
                             )
        Defendant.           )

## MEMORANDUM OPINION

The plaintiff, Leornzie Powell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Powell timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

# I. Introduction

Powell was 54 years old on the date of the ALJ's opinion. (Tr. at 35, 395). He attended high school through the tenth grade. (Tr. at 407). His past work experience includes employment as a circus laborer, materials handler, dishwasher, stable hand, brake drum repairer, and kitchen helper. (Tr. at 101-02). Powell claims that he became disabled on October 3, 2008, due to "seizures, heart trouble, diabetes, high blood pressure, and memory loss." (Tr. at 402). However, during his second hearing, he amended his disability onset date to December 1, 2009. (Tr. at 19, 359).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If

the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the

Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Powell meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2010. (Tr. at 22). She further determined that Powell has not engaged in substantial gainful activity since the amended alleged onset date of his disability. (Tr. at 22). According to the ALJ, the plaintiff has the following impairments that are considered "severe," based on the requirements set forth in the regulations: seizure disorder, hypertension, history of alcohol abuse, pain disorder, depressive disorder, anxiety disorder, personality disorder, and borderline intellectual functioning. (Tr. at 22). However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23). The ALJ did not find Powell's allegations relating to the limiting effects of these impairments to be entirely credible (tr. at 26), and she determined that he has the following residual functional capacity:

After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can lift and carry 25 pounds frequently and 50 pounds occasionally; he can walk for 1 hour in an 8-hour day, stand for 2 hours in an 8-hour day, and sit for 6 hours in an 8-hour day; he is limited to occasional balancing, stooping, and climbing ramps and stairs; he is limited to occupations which do not require climbing ladders, ropes, and scaffolds; he must be afforded the option to sit or stand for 1 to 2 minutes every hour or so at the workstation just to break up the standing, walking, or sitting; he should avoid dangerous, moving, unguarded machinery and unprotected heights; he can understand, remember, and carry out simple instructions and tasks; he is limited to jobs involving infrequent and well explained work place changes; he is limited to occasional interaction with the general public; he can frequently tolerate interaction with coworkers; and he can concentrate and remain on task for 2 hours at a time, sufficient to complete an 8-hour workday.

(Tr. at 25).

According to the ALJ, Mr. Powell is unable to perform any of his past relevant work, he is "closely approaching advanced age," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 33). She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not he has transferable job skills." (Tr. at 33). Based on the testimony of a vocational expert ("VE"), the ALJ found that Mr. Powell has the residual functional capacity to perform light "work that exists in significant numbers in the national economy." (Tr. at 34). Even

though additional limitations impede Plaintiff's "residual functional capacity to perform the full range of light work," the ALJ determined that Plaintiff "would be able to perform the requirements of representative occupations such as product marker . . . , hand packager . . . , and an assembler . . . ." (Tr. at 34). The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 1, 2009, through the date of this decision." (Tr. at 34).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Mitchell v. Commissioner, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Miles*, 84

F.3d at 1400. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Mr. Powell argues that the ALJ's decision should be reversed and remanded for three reasons. First, he asserts that the ALJ failed to allow his hearing counsel to question him about whether his mental functioning had improved since his

second ALJ hearing,[1] thus constituting an abuse of discretion in violation of the Administrative Procedures Act and resulting in the denial of effective representation. (Doc. 10, p. 7). Second, the plaintiff contends that the RFC is not supported by substantial evidence because the limitations included in the plaintiff's RFC are inconsistent with the regulatory definition of light work. (Doc. 10, p. 10). Third, Powell maintains that the ALJ improperly rejected the newer examining source opinions in favor of older examining and non-examining opinions. (Doc. 10, p. 13).

### A. Full and Fair Record

Mr. Powell argues that, during the third administrative hearing, the ALJ precluded his counsel from questioning him about whether "he recalled Dr. [John Paul] Schosheim's testimony" at the previous hearing. The plaintiff asserts that he intended to demonstrate that his mental functioning had declined since the previous hearing by using Dr. Schosheim's previous testimony as a metric. Because the Appeals Council directed the ALJ to evaluate Dr. Schosheim's opinion on remand, the Plaintiff contends that it was appropriate for his counsel to "elicit testimony

---

[1] The claimant's case originally went before an ALJ on January 7, 2011, and the ALJ issued a decision on April 7, 2011. (Tr. at 44, 129-46). The Appeals Council vacated the decision and remanded the case for further consideration. (Tr. at 147-50). On July 11, 2013, an ALJ conducted a second hearing and issued a decision on January 24, 2014. (Tr. at 62, 152-72). The Appeals Council again vacated the second decision and again remanded the case for further review. (Tr. at 173-75). On June 8, 2016, an ALJ conducted a third hearing and issued a decision on November 25, 2016. (Tr. at 82, 16-35). The Appeals Council denied review. (Tr. at 1).

from Plaintiff regarding the state of his mental functioning, using Dr. Schoshiem's [sic] prior testimony as a metric." (Doc. 10, p. 9). His counsel asserts that the plaintiff's testimony, as to the level of his improvement (or lack thereof), "would have been critical to the issue of disability." (Doc. 10, p. 9). Therefore, the plaintiff asserts that the ALJ's denial amounted to an abuse of discretion and denied the plaintiff due process. The Commissioner counters that the ALJ developed a full and fair record and asserts that the plaintiff has not demonstrated prejudice.

The transcript of the June 2016 administrative hearing records the following colloquy:

> Q: The second time you went to the hearing?
>
> A: Oh, yes.
>
> Q: And do you recall there being a medical expert there that testified?
>
> A: Yes.
>
> ALJ: All right, and don't go back over what happened at prior hearings.
>
> ATTY: Oh.
>
> ALJ: -- and don't have him testify as to what a doctor said during the hearings. I want him to testify as to what his problems are and why he can't work.

ATTY: Yes, Your Honor, I was -- my next question was going to be[,] have you experienced any improvement in your symptoms since that time?

CLMT: No, sir.

ATTY: Okay. So, and --

ALJ: All right. We're starting out fresh today. I don't care what happened in the prior hearing.

ATTY: Okay. So Mr. --

ALJ: So if you -- I need to know what symptoms he's having or what problems he's having.

ATTY: Okay.

(Doc. 7-3, pp. 97-98).

Under Eleventh Circuit precedent, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(b)); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. Both due process and the statutory duty to "develop a full and fair record," require the ALJ to give the claimant a fair opportunity to present evidence in support of his claim. While the law recognizes the inherent right of the ALJ to control the proceedings before her, an undue restriction of the claimant's right to present evidence can be a

violation of due process and an abuse of discretion by the ALJ. However, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham*, 129 F.3d at 1423. "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423.

Here, Mr. Powell has not demonstrated how the ALJ's denial of the line of questioning has prejudiced him. First, the ALJ possessed the necessary evidence to make the comparison on her own. During the most recent hearing, the Plaintiff testified as to his current symptoms. Dr. Schosheim's prior testimony was already in the record, and the ALJ actually considered this testimony in making her decision. Plaintiff's counsel did not need to question the Plaintiff explicitly about Dr. Schosheim's testimony to demonstrate the decline in the plaintiff's mental functioning. The ALJ possessed the necessary evidence (namely, the plaintiff's current testimony and Dr. Schosheim's previous testimony) to draw inferences regarding any potential decline in the Plaintiff's mental status. Second, the Appeals Council remanded the case to the ALJ to evaluate Dr. Schosheim's opinion, not to use it as a metric to discern a decline in the plaintiff's mental functioning as the plaintiff contends. (Tr. at 174). Third, the ALJ did not abuse her discretion under 5 U.S.C. § 706(2)(A) when she denied this line of questioning.

It was completely within her discretion to disallow the plaintiff from testifying as to Dr. Schosheim's previous testimony; *i.e.*, the ALJ had discretion to prevent the inclusion of hearsay into the record. It was not improper to preclude the Plaintiff from recasting or recharacterizing Dr. Schosheim's testimony, which was already part of the record and speaks for itself.

Therefore, the ALJ developed a full and fair record, did not abuse her discretion, and did not deprive the plaintiff of his due process rights. The plaintiff has not demonstrated any "evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423.

### B. RFC Determination

Powell argues that the RFC does not conform to the regulatory definition of light work. Specifically, the plaintiff contends that the lifting and carrying restrictions of 25 pounds frequently and 50 pounds occasionally exceed the restrictions established for light work and that the walking, standing, and sitting limitations are more consistent with sedentary work. Because the limitations established in the RFC do not conform to the regulatory definition of light work, the plaintiff asserts that the vocational expert's "testimony is incompatible with the" RFC. (Doc. 10, p. 13). The Commissioner contends that the ALJ properly determined the plaintiff's RFC before moving on to Steps Four and Five of the five-step sequential evaluation process. The Commissioner concedes that the RFC

"precludes a finding that [the] Plaintiff can perform all light work." (Doc. 11, p. 8). However, the Commissioner asserts that substantial evidence supports the ALJ's decision in light of the vocational expert's testimony.

The plaintiff's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545; *see also Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). In other words, a "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ "will assess . . . [a claimant's RFC] based on all the relevant medical and other evidence in" the record. 20 C.F.R. § 404.1520(e); *see also Phillips*, 357 F.3d at 1238. Under SSR 96-8p,

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

1996 WL 374184, at *1. Once established, the ALJ then uses the RFC to determine whether the claimant can return to his previous work or adjust to new work in the national economy. *Phillips*, 357 F.3d at 1238.

Issues develop when the plaintiff "does not neatly fall into any" of the exertional levels defined by 20 C.F.R. § 404.1567. *Watson v. Astrue*, 376 F. App'x

953, 958 (11th Cir. 2010) ("Some of his exertional limitations correspond more closely to one exertional level or another"); *see also Day v. Comm'r of Soc. Sec.*, No. 6:16-cv-191-Orl-22GJK, 2017 WL 1396476, at *5 (M.D. Fla. April 19, 2017) ("Where a claimant's RFC is in between two exertional levels . . ."). Under 20 C.F.R. § 404.1567(c),

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

*See also* 20 C.F.R. § 416.967(c). Under 20 C.F.R. § 404.1567(b),

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*See also* 20 C.F.R. § 416.967(b). Under 20 C.F.R. § 404.1567(a),

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See also* 20 C.F.R. § 416.967(a). Where an individual can "perform both some sedentary work and some light work[,]" an ALJ may appropriately find that the claimant is capable of work at the higher exertional level (that is, light work). *See Watson*, 376 F. App'x at 959.[2] The ALJ may establish an RFC finding the

---

[2]     Specifically, the Eleventh Circuit held that:

> [B]ecause of Watson's particular mix of limitations, Watson could perform both some sedentary work and some light work. The VE opined that there were a significant number of jobs in the economy that fell in Watson's reduced range of light work. Under the circumstances, the ALJ did not commit reversible error by choosing to rely only on the VE's testimony to determine, under step five, whether given Watson's age, education and work experience, Watson could "make an adjustment" to a range of light work reduced by his specific exertional and nonexertional limitations.

*Watson*, 376 F. App'x at 959.

    Similarly, in *Wickens v. Comm'r of Soc. Sec.*, No. 6:11-cv-1804-Orl-DAB, 2013 WL 436214, at *4 (M.D. Fla. Feb. 5, 2013), the ALJ found "that Plaintiff could stand/walk for only 2 hours in an 8–hour workday[,]" but "could lift or carry twenty pounds occasionally and ten pounds frequently." Because "the lifting and carrying limitations exceeded those found in sedentary work, the Court agree[d] with the Commissioner that the ALJ's RFC finding is properly characterized as a range of light work." *Wickens*, 2013 WL 436214, at *4; *see also Prince v. Colvin*, No. 5:12-cv-751-LSC, 2013 WL 754859, at *5-6 (N.D. Ala. Feb. 27, 2013).

    Admittedly, *Watson*, *Wickens*, and *Prince* involve arguments about whether the grid guidelines should have applied, but, in each case, when the plaintiff's RFC did not fit neatly into one of the exertional levels in order to use the grid guidelines, the ALJ described the limitations to a vocational expert ("VE") to determine whether jobs existed in the national economy for the claimant in light of his or her specific limitations. The ALJ's classification of the claimant's exertional limitations did not impact the validity of the RFC or the VE's resulting testimony about the existence of jobs. As long as the ALJ accurately described the claimant's limitations to the VE, the VE's resulting opinion about the availability of jobs in light of those limitations was valid and constituted a substantial-evidence basis for the ALJ's ultimate decision.

claimant capable of reduced light work with additional limitations rather than finding the claimant capable solely of sedentary work.

When a claimant does not fall neatly into either light work or sedentary work, however, the ALJ must resort to testimony from a vocational expert about the existence of jobs in the national economy in light of the claimant's limitations rather than relying on the grid guidelines. *Phillips*, 357 F.3d at 1242. In the Eleventh Circuit,

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." However, [e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."

*Phillips*, 357 F.3d at 1242 (emphasis in original) (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). To be capable of completing a "full range of employment," the claimant must be "able to do 'unlimited' types of work at the given exertional level." *Phillips*, 357 F.3d at 1242. Once the ALJ determines that the claimant "cannot perform a full range or unlimited types of work at the [light work] level given her exertional limitations, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the [light work] level within the national economy that [the claimant] can perform." *Phillips*, 357

F.3d at 1242. The ALJ may not use the grid guidelines if the claimant's "nonexertional impairments significantly limit her basic work skills[,]" but "must instead consult a vocational expert." *Phillips*, 357 F.3d at 1243. Significant limitations of basic work skills "prohibit a claimant from performing 'a wide range' of work at a given work level." *Phillips*, 357 F.3d at 1243. Essentially, it is more important that jobs exist for the claimant in light of his or her individually crafted RFC than to conform the RFC to the regulatory definition of an exertional level.

Here, the ALJ determined that Mr. Powell was capable of light work, but found that Powell required several exertional and non-exertional limitations. The limitations imposed by the ALJ demonstrate that Powell is between the medium work, light work, and sedentary work exertional levels. The ALJ found that the plaintiff could lift and carry weight above the light work level, but she limited the plaintiff to walking for one hour in an eight-hour workday, to standing for two hours in an eight-hour workday, and to sitting for six hours in an eight-hour workday. The walking/standing/sitting limitations appear to more appropriately fall under the sedentary work level. Furthermore, the ALJ imposed various non-exertional limitations prohibiting the plaintiff from working near unguarded machinery and limiting the plaintiff to jobs that require only simple instructions.

Because the plaintiff did not appear to fall neatly into the medium work, light work, or sedentary exertional levels, the ALJ consulted a VE as required by the clear mandate of *Phillips*.[3] During the third hearing, the following exchange occurred:

> ALJ: All right, thank you. Let's assume that we have a third hypothetical individual with the claimant's education, training and work experience who will be Mr. Charlie. He would be limited to a maximum of a light range of work as that term is defined under the regulations, but would be limited to lifting and carrying up to 25 pounds frequently, 50 pounds occasionally; walking a maximum one hour out of an eight-hour workday; standing a maximum of two hours out of an eight-hour workday and sitting a maximum of six hours out of an eight-hour workday.
>
> Occasional balancing, stooping, climbing ramps or stairs; no climbing of ropes, ladders or scaffolds; must be afforded the option to sit or stand during the workday one or two minutes every hour or so at the workstation just to break up the standing, walking or sitting.
>
> Would need to avoid dangerous/moving/unguarded machinery, unprotected heights. Again, would be able to understand, remember and carry out simple instructions and tasks; limited to jobs involving infrequent and well-explained workplace changes; occasional interaction with the general public; frequent interaction with co-workers and, finally, would be able to concentrate and remain on task for two hours at a time sufficient to complete an eight-hour workday.
>
> Would there be any jobs in the national economy that a person with those limitations could perform?

---

[3] Additionally, the Commissioner concedes that the plaintiff was not capable of performing a full range of light work. Therefore, it was appropriate for the ALJ to consult a vocational expert to determine whether a significant number of jobs existed in the national economy.

> VE:  Yes, there would be.  This would allow access to the product marker and assembler given in response to the second hypothetical. However, their numbers would be reduced by 50 percent to allow for the sit and stand option.  This would also allow access to the hand packager at the medium level with the numbers reduced by 50 percent.
>
> ALJ:  So each of those numbers, then, would be more than 250,000 if the prior responses were more than 500,000?
>
> VE:  Yes, that's correct.

(Tr. at 104-05).  Even though the RFC established by the ALJ appears to conflict with the ALJ's determination that the plaintiff is capable of light work, the VE's testimony reveals that jobs exist in significant numbers within the national economy in light of the limitations imposed by the ALJ.  In other words, the ALJ properly presented to the VE all of the plaintiff's limitations contained in the plaintiff's RFC, and the VE determined that significant jobs exist.  At most, the ALJ committed harmless error by establishing an RFC with exertional and non-exertional limitations more stringent than the light work exertional level.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").[4]

---

[4]     The ALJ's failure to discuss arm and leg controls in light of the exertional limitations imposed by the ALJ, which effectively limited the plaintiff to a sit-down job, amounts to

For these reasons, the court finds that the RFC does not conflict with the ALJ's determination that Powell can perform light work. Accordingly, substantial evidence supports the RFC established by the ALJ.

## C. Consultative Opinions

Mr. Powell argues that the ALJ improperly rejected the medical opinions of the consultative psychologists and physicians who more recently examined the plaintiff and found him suffering from limitations in mental functioning, in favor of older consultative examinations. Specifically, he asserts that the ALJ "improperly assign[ed] less weight to the opinions of the more recent favorable opinions of the State Agency examining experts in favor of opinions from a stale, outdated consultative examination and the corresponding non-examining State Agency medical/psychological consultants." (Doc. 10, p. 18). The Commissioner contends that substantial evidence supports the ALJ's decision to afford the greatest weight to Dr. Roger's report while discounting the reports by Dr. Gaines and Dr. Schosheim and affording partial weight to Dr. Walker's report.

Under prevailing law, the ALJ must consider several factors in determining the weight to be given to a medical opinion. The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends,

---

harmless error. The VE identified three jobs that the plaintiff can complete, and none of the identified jobs require the plaintiff to use arm or leg controls or work around "dangerous, moving, unguarded machinery." (Tr. at 25).

among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Different types of medical sources are entitled to differing weights. 20 C.F.R. § 404.1527(c). The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. 20 C.F.R. § 404.1527(c)(2). A non-treating physician or psychologist, who has examined the patient but does not treat the patient regularly, is entitled to less weight. 20 C.F.R. § 404.1527(c)(1)-(2). The least weight is given to a non-examining physician, who may provide an opinion based on a review of the record only but who has not examined the patient. 20 C.F.R. § 404.1527(c)(1). Any medical source's opinion may be rejected where the evidence supports a contrary conclusion. *See, e.g.*, *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2008).

The court also must be aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the

doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Mr. Powell received varying opinions regarding his mental functioning from various non-treating physicians. In August 2016, Dr. Gaines, a consulting psychologist, determined that Powell fell "into the Extremely Low range of intellectual functioning based on" his Full Scale IQ score of 53 on the Wechsler Adult Intelligence Scale, Fourth Edition. (Tr. at 1245-47). Likewise, during the second hearing on July 11, 2013, Dr. Schosheim, a consulting psychiatrist, believed that the plaintiff "has limited intellectual ability." (Tr. at 76). In January 2009, Dr. Walker, a consulting psychologist, found that the plaintiff had "probable borderline intellectual capacity." (Tr. at 1015). However, in December 2009, Dr. Rodgers, a consulting psychologist, did not determine that the plaintiff's mental functioning was limited, noting relatively positive results in concentration and attention, memory, fund of information, and abstraction. (Tr. at 1105). He found that physical, not psychiatric, symptoms presented the major obstacle to employment. (Tr. at 1106). Furthermore, Dr. Williams, a non-examining

physician, found only moderate limitations from the plaintiff's mental functioning. (Tr. at 1113-30).  Additionally, Dr. Dennis, a non-examining physician, estimated that Mr. Powell has borderline intelligence, but found, at most, only moderate limitations in the plaintiff's mental functioning.  (Tr. at 1017-34).

As to Mr. Powell's complaints about his mental functioning, the ALJ determined that his claim was not fully supported.  (Tr. at 28).  Specifically, the ALJ found, as follows:

> The claimant has had no history of formal mental health treatment. He has not sought psychiatric medication management or participated in group or individual psychotherapy. He has never required psychiatric hospitalization. This significant lack of formal mental health treatment diminishes the persuasiveness of his allegations of disabling mental limitations.
>
> Moreover, the claimant has rarely reported any psychologically based complaints to his treating sources at the Community Free Clinic. Treatment notes from this clinic are furthermore lacking in descriptive findings with respect to the claimant's mental status and psychological functioning.  The undersigned considers this scarcity of complaints and findings to be another factor[] that undermines the claimant's allegations of disabling mental limitations.
>
> However, the undersigned has also considered the three consultative examinations of record, the testimony from a prior hearing by a medical expert, and the medical source statements of two state agency psychological consultants. The undersigned finds that the mental status observations by three consultative psychologists warrant the mental limitations in the above residual functional capacity.

(Tr. at 28-29).

The ALJ gave great weight or partial weight to the opinions of Dr. Rogers, Dr. Walker, Dr. Dennis, and Dr. Williams. (Tr. at 29-30). The ALJ gave great weight to Dr. Rogers's opinion because his opinion "is supported by his mental status examination findings and [is] consistent with the claimant's history of skilled and semiskilled work." (Tr. at 30). The ALJ held that "Dr. Roger's findings support the mental limitations stated in the above residual functional capacity." (Tr. at 30). The ALJ gave partial weight to Dr. Walker's opinion, "only to the extent it is consistent with the above residual functional capacity and moderate limitations." (Tr. at 29). The ALJ found that "[m]ore restrictive limitations are not supported by Dr. Walker's mental status examination findings or the claimant's history of skilled and semiskilled work." (Tr. at 29). Furthermore, the ALJ gave great weight to Dr. Dennis's and Dr. Williams's opinions because their "conclusions are supported by the medical evidence of record and consistent with the claimant's history of skilled and semiskilled work" and because "the consistency between the assessments of Dr. Walker, Dr. Rogers, Dr. Dennis, and Dr. Williams bolsters the persuasiveness of these medical source statements." (Tr. at 30).

However, the ALJ gave little weight to the opinions of Dr. Schosheim and Dr. Gaines. (Tr. at 30, 32). The ALJ found Dr. Schosheim's opinion was "contradicted by the mental status examination findings of Dr. Walker and Dr.

Estock [sic],[5] who observed appropriate attention and concentration and ability to perform serial 7s subtraction tasks, respectively." (Tr. at 30). Additionally, the ALJ held that his opinion was "inconsistent with the claimant's history of working in skilled and semiskilled occupations." (Tr. at 30). The ALJ gave little weight to Dr. Gaines's "examination, findings, diagnoses, and opinion" (tr. at 32) for several reasons:

> The undersigned notes that they are inconsistent with the claimant's history of working in skilled and semiskilled occupations. In addition, the undersigned furthermore notes that Dr. Gaines relied on the claimant's self-report of special education. Dr. Gaines, herself, noted that the claimant has inconsistently reported his education history. The undersigned furthermore observes that the record contains no actual special education records backing up the claimant's inconsistent report. The undersigned also notes that the other two consultative psychologists did not diagnose mild intellectual disability; rather, Dr. Walker only diagnose[d] probable borderline intellectual functioning, and Dr. Rogers noted no Axis II diagnosis other than personality disorder. Lastly, the undersigned finds that Dr. Gaines's assessment of marked degrees of limitation is completely inconsistent with her finding that he is able to follow simple written and spoken instructions immediately after they are given to him.

(Tr. at 32). Although Dr. Gaines found that Mr. Powell had a full-scale IQ of 53, this finding alone is not conclusive of a developmental disability under Listing 12.05(C). The court of appeals has said:

---

[5] This reference to Dr. Estock in the ALJ's decision appears to be in error. Dr. Estock did not provide an opinion on any matter in Powell's administrative claim or in this case. Likely, the reference should have been to Dr. Rogers, who did have the plaintiff perform serial 7s subtraction problems. (Tr. at 1105).

> The level of severity under Listing 12.05(C) is met when a claimant proffers a valid verbal, performance, or full scale IQ of 60 through 70 and suffers from an impairment that imposes an additional and significant work-related limitation of function that more than minimally or slightly affects the claimant's ability to do basic work. See *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir.1985). But a valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about claimant's daily activities. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir.1986).

*Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006). The court went on to note that the claimant's "long work history in semi-skilled positions and daily activities were inconsistent with his adult IQ scores." *Id.* The claimant's Adult Function Report, completed on his behalf by his sister, states that he is able to cook, iron, pay bills, count change, and handle bank accounts and checkbooks. (Tr. at 431). The ALJ's reliance on Mr. Powell's work history of employment in semi-skilled jobs was not error.

The ALJ did not err in affording the assigned weight to each of the medical opinions provided. Having reviewed the ALJ's decision and the various opinions, the court finds that the ALJ accurately and faithfully summarized the opinions of Dr. Walker, Dr. Rogers, Dr. Dennis, Dr. Williams, Dr. Schosheim, and Dr. Gaines. Substantial evidence supports the ALJ's decision to discount Dr. Schosheim's and Dr. Gaines's opinions, to give partial weight to Dr. Walker's opinion, and to afford great weight to Dr. Rogers', Dr. Dennis's, and Dr. Williams's opinions. The

record does not contain any records from *treating* physicians regarding his mental functioning. While the Community Free Clinic noted a history of bipolar disorder, these notations are scarce and the corresponding records do not indicate any course of treatment. (Tr. at 1185-89). Furthermore, the plaintiff has self-reported employment as a brake-drum repairer, which is classified as a skilled occupation. (Tr. at 421, 102).[6]

Accordingly, substantial evidence supports the ALJ's decision to afford little weight to Dr. Schosheim's and Dr. Gaines's opinions and to rely upon the opinions of Dr. Rogers, Dr. Walker, Dr. Dennis, and Dr. Williams with respect to Mr. Powell's mental functioning.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Powell's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered affirming the determination and dismissing this action.

DONE this 21st day of September, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[6] Although the claimant's Work History Report described his position at Idle Drum as a "Laborer," his actual work description states, "Turns drums of trucks, cars, buses, vans, anything that is automotive[,] fixing drums on vehicles; lifting heavy car and truck parts." (Tr. at 421). The vocational expert classified this work as "skilled." (Tr. at 102).